**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **GABRIEL MIRANDA, JR.,** | § | |
| **DECEASED, MARIA FUENTES,** | § | |
| **GABRIEL MIRANDA, SR.,** | § | |
| **ALEXANDRIA SUZANNE MELENDEZ** | § | |
| **REUBEN ANTONIO DELEON III,** | § | |
| **and JON HIDALGO DOE** | § | |
| **Plaintiffs,** | § | **Civil Action No. 7:21-cv-00337** |
| | § | |
| **v.** | § | |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **SCHOOL DISTRICT,** | § | |
| **Defendant.** | § | **JURY DEMAND** |

**RESPONSE TO DEFENDANT HARLINGEN INDEPENDENT SCHOOL DISTRICT'S**
**12(b)(1) OR IN THE ALTERNATIVE 12(b)(6) MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Gabriel Miranda, Jr., Deceased by and through his heirs at law[1] including

his natural parents and siblings named above, collectively called Plaintiffs herein and files this their

*Response To The Harlingen Consolidated School District's* ("the School District") *12(b)(1) Motion*

*To Dismiss Or In The Alternative 12(b)(6) Motion To Dismiss Plaintiffs First Amended Complaint,*

and would respectfully show this Court as follows:

## I. BRIEF INTRODUCTION TO THIS CASE

1.       On or about November 14, 2016 Gabriel Miranda, Jr. was on a field trip with other members

of the Vernon Middle School 8th Grade Band.  At some point the exit door opened slightly

---

[1].  Plaintiffs ask the Court to take Judicial Notice of the state probate court proceedings of Cause No. 2018-CPC-003267, where mother and father were appointed as co-representatives of the estate.

and a loud buzzer went off, signaling to all aboard the bus, including and especially the bus driver, the door was ajar.  Instead of slowing down and stopping the bus as required, the driver continued driving, now at an unsafe speed. The buzzer went off again and the bus driver again failed to stop. Finally, the door opened all the way and Gabriel tried to close the door but could not and fell out of the speeding vehicle and likely died upon impact.  As to the failures of the bus driver to operate the vehicle safely, Plaintiffs have brought forth this claim pursuant to the Texas Tort Claims Act, and seek damages accordingly. [DE# 18, ¶1].

2.      After Gabriel's death, and before a thorough and  full investigation and autopsy had not yet taken place, the Defendant School District joined with representatives of the Edinburgh Police Department in conspiring a theory that Gabriel died because he committed suicide. The County Coroner opined, with support of the Defendant that many young men of Hispanic descent commit suicide even with no prior warnings. Recently, audio portions of the bus trip clearly exhibit that Gabriel was not suicidal at all, let alone because he was hopeless and Hispanic.  Accordingly, Plaintiffs also bring forth a claim of discrimination based upon race, pursuant to Title VI of the Civil Rights Acts of 1964, 42 U.S.C. §2000d and state claims noted above. [DE# 18, ¶2].

## II.   THE SCHOOL DISTRICTS MOTIONS TO DISMISS AND BRIEF RESPONSE

3.      The District has argued that the Plaintiffs do not have capacity to bring this lawsuit. Further, that they have not provided sufficient facts to support a claim the District violated the Texas Tort Claims Act.  In a related vein, Plaintiffs fail to show how the District's governmental immunity is not waived. Moreover, that Plaintiffs can't bring forth a claim pursuant to Title VI for discrimination based upon race, first because Plaintiffs cannot bring post-death claims

on behalf of Gabriel, Jr. These three defenses are all related to the 12(b)(1) *Motion*.   The

second defense to the Title VI Claim is that it fails to show intentional discrimination. [DE#

22, p. 3/9].

4.      First the District's *Motion* should be denied because they destroyed and withheld evidence.

In any case, the District is incorrect on all accounts.  The State Probate Court has appointed

a representative of the estate so that person has capacity to bring forth this litigation on behalf

fo the estate.  In fact this Court has already taken *Judicial Notice* of that finding.  In addition,

Plaintiffs have brought forth sufficient facts to state a plausible claim pursuant to the Texas

Tort Claims Act.  In fact, that too has already been determined by a court of competent

jurisdiction and Plaintiffs ask this Court to again *Judicial Notice*.  Moreover and pursuant

to the *plain language* of the Texas Civil Practices & Remedies Code, Plaintiffs can in fact

bring a cause of action on behalf of a deceased person, especially when the deceased is

maligned and slandered, including and especially because of his race.

### III.  STANDARD OF REVIEW

A.      FOR A 12(b)(1) MOTION TO DISMISS

5.      In examining a Rule 12(b)(1) motion, the court may only consider matters of fact that are

evidenced on the face of the pleadings. Ultimately, a motion to dismiss for lack of subject

matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove

any set of facts in support of his claim that would entitle Plaintiff to relief.  As in any such

motion all the facts as alleged are deemed true and all reasonable inferences inure to the

benefit the non-movant.  Ramming v. U.S., 281 F.3d 158 (5th Cir. 2001).

B.      FOR A 12(b)(6) MOTION TO DISMISS

6.      A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of its claims that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45 46, (1957). Moreover, the complaint must be liberally construed in favor of the plaintiff and the allegations contained therein must be taken as true. All reasonable inferences must inure to the benefit of Plaintiffs, as well. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).

7.      Further, the exacting standards governing Rule 12(b)(6) motions must be considered in light of the liberal pleading requirements of Rule 8(a). Furstenfeld v. Rogers, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002). Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A complaint will be deemed inadequate under Rule 8(a) only if it fails to: (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. General Star Indemnity Company v. Vesta Fire Insurance Corporation, 173 F.3d 946, 950 (5th Cir. 1999). A review of Plaintiffs complaint shows it would easily satisfy Rule 8 pleading requirements.

8.      Whether a claimant will ultimately be able to adduce evidence sufficient to support its claims on the merits is not a question for consideration in connection with the 12(b)(6) motion. General Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 951 (5th Cir. 1999). Motions to dismiss for failure to state a claim are viewed with disfavor in this circuit and are rarely granted. Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, 252 F.3d 781, 786 (5th Cir.), cert. denied, 534 U.S. 995 (2001).  It is well-settled

that liberal discovery rules and summary judgment motions, not motions to dismiss, should be used to define disputed facts and issues and to dispose of un-meritorious claims. <u>Furstenfeld</u> at *5..

9.   As will be more fully described below, Plaintiffs provide support that they have stated a claim that need not be dismissed, at this juncture of the proceedings, pursuant to Rule 12(b)(6) and Rule 8.   Of course, if the Court determines that Plaintiffs have failed to adequately state a claim upon which relief can be granted, before the motion is granted, the plaintiff should be given the opportunity to replead. <u>Borninski v. Williamson</u>, No. 3:02 CV 1014 L, 2002 U.S. Dist. LEXIS 22346, at *4 (N.D. Tex. Nov. 18, 2002) [holds that dismissal is warranted only if, after having been given the opportunity to amend, plaintiff still fails to state a claim]; *see also* United States ex rel. Adrian v. Regents of University of California, 363 F.3d 398, 403 (5th Cir. 2004) [citing Federal Rule of Civil Procedure 15(a) this court holds that leave to amend should be freely given]; <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir. 2002) [notes that the Fifth Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim"].

## IV.  <u>EVIDENCE CONSIDERED</u>

10.   Plaintiffs ask the Court to take *Judicial Notice* of all the pleadings in this cause, as the School District has likewise requested. [DE# 22, p. 1/9, ¶1] In addition, Plaintiffs ask the Court to take Judicial Notice of the following:

11.   The Texas Tort Claims Act case, pursuant Tex. Civ. Prac. & Rem. Code §101.021. against the School District in State Court. This case was at C-4899-17-1 in the District Court of

Hidalgo County, Texas alleging the School District was negligent and thereby violated the requisites of the Texas Tort Claims Act.  The case was appealed and the Court of Appeals determined that Plaintiffs had a plausible claim and was sent back to State Court.  2019 Tex. App. LEXIS 2012 (13th Dist.- Corpus Christi- Edinburg; March 14, 2019).  On September 7, 2021 the School District removed the case to federal court, now before this Honorable Judge, and set at Cause Number 7:21-cv-00337.

12.  Case 7:18-cv-00348, filed a cause of action in the Federal District Court- McAllen Division, which brought forward claims as contemplated by the 14th Amendment to the United States Constitution, including substantive and procedural due process claims, as well as those considered to be violations of equal protection, all as contemplated by 42 U.S.C. Section 1983 against the School District, the City of Edinburgh, the County of Hidalgo, a number of individuals working on their behalf and Doctor Farley and her medical group. The case was dismissed for lack of jurisdiction.   The case was appealed to the Fifth Circuit but late dismissed for want of prosecution.   Recently this Counsel filed a *Rule 60 Motion* in an attempt to resuscitate these claims.

13.  Plaintiffs also ask the Court to take *Judicial Notice* of Plaintiffs' claims against Dr. Farley and Valley Forensics, for claims that those Defendants slandered the Deceased, as  first set out in No. C-4899-17-I (1), 398th District Court, Hidalgo County, Texas.  Specifically that these Defendants "took "malicious and callous actions" to cover up the cause of his death. Such mal-intent included but was not limited to stating that is was common for young men of Hispanic descent to commit suicide.  The Defendants filed a jurisdictional plea arguing that allegations against Dr. Farley were health care acts as contemplated by the Texas

Medical Practices Act, Chapter 74 of the Texas Civil Practices & Remedies Code and since the Plaintiffs had not followed the procedural requisites of that chapter, the case should be dismissed.  The District Judge agreed..  Plaintiffs appealed that determination which was recently granted with the case remanded back to state court.[2]  *See* <u>Miranda v. Farley</u>, 2022 Tex. App. LEXIS 59 (13th Dist.- Corpus Christi- Edinburg; January 6, 2022).

## V. <u>RELEVANT FACTUAL RESUME</u>

14.    Plaintiffs incorporate by reference as if fully set forth herein, the factual resume submitted in the First Amended Complaint. [DE# 18].

A.    ABOUT GABRIEL MIRANDA, JR. AND FAMILY

15.    Gabriel was born on December 28, 2002 to his mother Maria and father, Gabriel, Senior.  It was a large and loving family with numerous aunts, uncles, cousins, grandparents and his siblings, all steeped in a long and respectful Mexican-American and Hispanic Heritage. From early on Gabriel expressed an interest in music. He was also a very good student and got top grades in many of his academic classes.  He also joined the Middle School Band and learned how to play both the regular and baritone saxophone and by the Fall of 2016 was awarded first chair in the School Band for the baritone saxophone. He was so happy he designed a T-Shirt for all band members.  [DE# 18, ¶9-11].

B.    THE FIELD TRIP OF NOVEMBER 14, 2016

16.    On November 14th the Band went to the University of Texas- Rio Grande Valley for a field trip. One of his instructors had just told him that he was chosen to play a "solo" for an

---

[2].  As this Court well-knows the parties have agreed to mediate their differences and is currently set for March 31, 2022 before the Magistrate Judge.

upcoming band performance so he naturally quite happy about the selection.  Gabriel awoke excited to visit the University and reminded his mother to place the order for the T-Shirts he had designed for fellow band members.  The Bus was equipped with four (4) video cameras and concurrent audio channels. In order to assure Laura Castro Ruiz, the School Bus Driver was not distracted with supervisory duties the District appointed two teachers, A.J. Ayala and Michael J. Carlstead to supervise.  At about 8:27a.m. Gabriel is the first student to enter the bus and is happy and smiling.  At about 8:41am there is a comment from a male student that he "can't shut it."  About two minutes later a female student yells out "close it."  Gabriel and his fellow students are happy being on the bus and continue to communicate in this manner.  Ayala and Carlsted enter the bus and sit near the front. [DE# 18, ¶12- 17].

17.     At about 8:55a.m. the bus starts moving and by 9:07 is on the highway. At about 9:16am there is beep.  The bus driver continues.  At about 9:11a.m. a girl says "Oh, like .. If right now ... if I were to fall out." Another says ".. I double dare you."  The first again says "if I were to fall off. ..."  At about 9:35a.m. there is another beep.  The bus driver continues.  At about 9:36a.m a male student says "if you move it, you are not going to die."  At about 9:37a.m. there is another beep.  The bus driver continues.   At about 9:40a.m. a female student says "I said close it."   Shortly thereafter there is another beep.  The bus driver continues.  At about 9:41a.m. a male student says "Do it right now" and Gabriel says "no" and then says "don't touch it."  There's a scuffle.  Gabriel again says "don't touch it."  Then he says "no."  Then again "no, stop."  A few seconds the alarm goes off again.  There is big thump noise. The driver continues. Gabriel scream.  Finally, the teacher's turn around.  About 30 seconds later the bus finally stops. [DE# 18, ¶19- 30].

C.    IMMEDIATELY AFTER THE INCIDENT

18.    The bus the Driver continues driving for several miles before pulling over to the side of the road.  At 9:42 a female voice, M.D., says "he was trying to close the door."  A few minutes later E.L. also says "... he was trying to close the door."  The audio portion of the tape reflects that many students are concerned that the dorr was not functioning correctly.  A female student reports that everything was "caught on camera anyways."  A few moments later student J.O. states "he was talking to us, he wasn't even mad, he (Gabriel) as making jokes."  [DE# 18, ¶31- 37].

D.    THE COVER-UP BEGINS

19.    Some students tell others to delete all videos and text messages.  Members of the Hidalgo County Sheriff' Department arrive.  One fills out an incident report while on the scene and wrote "..... Dispatch advised that a child possibly fell off a school bus."  Nevertheless, there is some chatter that Gabriel had broken up with a former girlfriend and became suicidal.  Within moments across the radios for all the responders the narrative that Gabriel had committed suicide gained momentum and credibility.  [DE# 18, ¶38- 40].

20.    Officer Armando Celedon, an Investigator with the City of Edinburgh supervised the investigation.  He told the Miranda family it would take close to a month for it, and the coroner's report to be completed.  At first he told the family that he had looked into Gabriel's phone and found no evidence that Gabriel was depressed or wanted to hurt himself.  Nevertheless and in and around the same time, Celedon was communicating with a School District employee and Assistant Director of Transportation Hector Ramos.  While Ramos had only been with the District about three years he had 35 years in law enforcement with the

Department of Public Safety and was thus trusted by Investigator Celedon.  Ramos arrived

on the scene.  Soon after the incident Celedon and Ramos began to report that Gabriel's

death was a suicide and intentional. [DE# 18, ¶41- 42].

21.    At and around the 10:30am Celedon, Ramos and members of the Edinburg Police

Department immediately began to interview and reduce into affidavit form statement from

the students.  The record reflects there 41 students on the bus.   Only 29 affidavits have been

produced by the City to the family upon a previous request, but of those, almost all reinforce

the fact that there had been numerous beeping sounds and the bus driver kept driving.

Further, many confirmed that when the door was open the driver still continued driving for

a significant period of time. Almost all of the 29 affidavits produced by the City reinforce

theory that Gabriel was depressed, suicidal and committed suicide except a few "that got

though." In this group, a male student J.T.R. reported that Gabriel "was attempting to close

it but fell out of the bus" as did a similar statement by N.R.  Another male, J.L. wrote that

"I heard people saying that the door was opened by people messing with it."  A female

student S.H. wrote that she heard that "some girl was saying he was trying to close the back

door as did C.M.  S.N.G said the same. M.D. made a similar comment. Another female

student S.A.M. who was sitting right in front of E.L. summed it up best and wrote:

"I heard the little siren (first) and looked back.  I saw the back bus door open
(second) and then I saw Gabriel  Miranda standing by the door (third).  I saw him
reaching for the door (fourth). I then saw him fall out of the bus on the roadway
(fifth)."

[DE# 18, ¶43- 46].

22.    On the day of Gabriel's Death, Superintendent Cavazos informed the public that the School

District had just recently received funding for new video cameras to be installed in all its school buses. Cavazos alo announced that the video on Bus #118 Video would provide answers as to what occurred. Later it was announced that the video system had failed. Specifically, there is video, then it unexplicably shows a blank screen until after Gabriel's fall. Then the video picks up again. As noted above, the video of all four channels remains. [DE# 18, ¶8, 47].

23.    A toxicology report was ordered and the Hidalgo County instructed its pathologist, Dr. Farley to conduct an autopsy. Amazingly, a process that was originally thought to take a month was completed overnight. But the decision was already made, Detective Celedon has communicated with ISD Employee Hector Ramos at about 5:00pm on the day of the incident and reported it already had been determined to be suicide even though the audio-video tape had not even yet been disgorged and produced. Just a day after Gabriel's death, on the 15th Dr. Farley wrote that the cause was suicide. She wrote that she based her decision solely on "investigative information available including affidavits from individuals on the bus." [DE# 18, ¶48- 50].

24.    On November 16th, just the second full day after the Gabriel's death Lt. Oscar Trevino, Assistant Police Chief, while standing in front of the family's house, with Gabriel's close and extended family, ands numerous fiends announced that the death was ruled a suicide based upon the then open investigation and the Coroner's Report. He told the family the video supported that result. As noted above, later the entire file was requested by the family. In it was a significant amount of information that did not support the suicide theory, all noted above. Most importantly, and also in addition to the above, a adult witness named Earon Fox

who was driving behind the school bus and not a School District employee or parent of a student was also interviewed by the police.  In his own handwriting he wrote that "... the back door was open wide. I saw him (Gabriel) attempting to close the door holding with his left arm & reaching reach with his right arm ..."  and "he landed on his feet ... " Fox commented that the bus was driving while the door was open.  The written affidavit that the police asked him to sign to did not have all this information.  Josh Hernandez with EMS at the scene heard a student say that said "it didn't look like he intentionally jumped out, ... it looked like he was trying to close the door but had fell out. I also heard a student was sitting close to him on the bus and they were playing with the door and that he didn't intentionally jump out ...."  In one officer report, it was noted that some students  reported "he was trying to close the door" and there was another statement that "other students were playing with the door."  Later there were text messages between various students including J.O. discussing the rumor there was a dare about playing with the door and/or door handle.  [DE# 18, ¶51-56].

E.    THE FINAL REPORTS

25.    When Coroner Farley issued her report she confirmed the suicide was solely based upon statements given to her that supported that theory; i.e., affidavits of students.  None of the information that supported a different narrative was apparently provided to her, the video tape, the audio takes, other statements from students who stated Gabriel was trying to close the exit door nor the statement from neutral citizens like Fox and the EMS provider, or text messages.  Notwithstanding all the above, the final report provided by Investigator Celedon ruled the incident as suicide.  Assistant Chief O. Trevino on behalf of the City ratified this

conclusion even though it does not include any of the time-designated facts from the previous section and available in the audio evidence collected by the City.  If in fact Trevino and others relied on only one video channel that shows nothing, even though he told the family that the video evidence supports a death b y suicide theory.  The report mischaracterizes all the evidence and steers the reader into the belief that Gabriel was depressed and committed suicide.  There is no mention of any investigation into the story there was a dare between the boys, including his nephew J.O., about opening the door. There is no recognition of the first hand neutral observation by Earon Fox.  Of course by then he had the Coroner's Report by Farley which ratified this conclusion.  In fact, she went further and stated it was common for young men of Hispanic heritage from the Valley to commit suicide, even without ever showing prior signs of depression.   The School District Superintendent Cavazos joined in the conspiracy and coverup at the at time. Jose Davila, a School District employee had been asked to provide the audio and video computer generated information to the City of Edinburgh Police for the investigation. In one report he admitted and wrote that "all data deleted from both transportation pc's.[DE# 18, ¶57- 59].

E.     THE SCHOOL DISTRICT'S INVESTIGATION

26.    In early interviews with the Investigators with the City and later the School District, Bus Driver Laura Castro Ruiz, stated that she heard the beeping often.  But rather than stop as required, she did not because she thought the sounds were caused by windows opening and not the exit.  Thinking there was no danger, she kept driving. In fact, she admits a number of times in interviews and depositions that she has heard a buzzer go off several times previous to that day, and that day as well, but as she had previously kept driving anyway. The

opening of the window and exit door apparently make almost the same or similar sound. Also, she has testified that students in the past had messed around with the back door exit and handle, so she thought nothing of it when she heard it again that day. A number student affidavits taken on the day of the incident and again during the District Investigation state the same, that the back door had beeped a number of times and the bus driver did not stop driving. [DE# 18, ¶60- 61].

27.     The School District Superintendent Cavazos of the Defendant School District ratified and adopted a self-serving finding that Gabriel died at his own hand and because Hispanic males tended to be suicidal, even though there was objectively verifiable evidence in support of a different conclusion by their own inquiry afterward. Apparently some of that evidence was destroyed. Rather the of the Defendant School District relied upon a false narrative and raced-based stereotype fostered by the Coroner, in an effort to deflect criticism and responsibility from itself and destroyed evidence in support of this self-serving theory. While still yet alive Gabriel's good name was defamed. After the "death by suicide" narrative became public his family became objects of derision, experienced embarrassment, significant emotional anguish and legal expenses in defending "their good name." Of course, even if by some stretch Gabriel did die by his own hand, if the School Bus Driver had followed necessary standards of care, he would be alive today.

28.     They were so intent is obviating the blame for Gabriel's death that the evidence gathered in their own investigation clearly supports the theory the bus had problems with the windows, the door, the bus' emergency activation system and in as to all, the driver was negligent. [DE# 18, ¶62- 65].

### V.  ARGUMENT AND AUTHORITIES REGARDING THE 12(b)(1) MOTION

29.     Plaintiffs incorporate by reference as if fully set forth herein all the above-noted paragraphs in this section dealing with causes of action.  Equally each section and paragraph below incorporates by reference as if fully set forth herein the one above it.

A.     THE DISTRICT DESTROYED EVIDENCE SO THEIR MOTION SHOULD BE DENIED

30.     Federal Rule of Civil Procedure 37(e)(1) states that the court, "upon finding prejudice to another party from loss of [electronically stored] information, may order measures no greater than necessary to cure the prejudice[.]" FED. R. CIV. P. 37(e)(1). *See, e.g.*, Villalon v. Cameron County, 2017 U.S. Dist. LEXIS 222483, (S.D. Tex. June 22, 2017)55 at *7 [awarding reasonable attorney fees pursuant to Rule 37(e)(1)].  Here Plaintiffs have provided plausible factual support for the proposition that the School District Defendant has destroyed or withheld relevant evidence with mal-intent.  Accordingly an appropriate sanction at this stage olf the litigation si that their *Motion To Dismiss* as to all claim should be denied.

B.     THE NON-PARENTS HAVE STANDING

31.     Plaintiffs ask the Court to take *Judicial Notice* of the State Probate Court proceedings of Cause No. 2018-CPC-003267, where mother and father were appointed as co-representatives of the estate.  Additionally, Plaintiffs ask the Court to take *Judicial Notice* of the proceedings in Cause 7:18-cv-00348, filed before this Honorable Judge, here in the Federal District Court- McAllen Division where this Court has already addressed this same issue. This part of the District's *Motion* should be denied.  Alternatively, and to the extent there is some procedural infirmity in nomenclature or styling of this cause, Plaintiffs should be permitted to correct this purported error.

C.      PLAINTIFFS HAVE PLED SUFFICIENT FACTS TO SUPPORT TORT LIABILITY

32.     The Texas Tort Claims Act at Chapter 101, Section 101.021(1)(A) of the Civil Practices &
        Remedies Code sets forth the elements that Plaintiffs must meet in order to have a legal
        claim against the Harlingen Consolidated School District Defendant as to this cause of
        action.    The very language of the statute includes a specific waiver of immunity from a
        lawsuit.  To the extent the District is arguing that state lwa does not have a such a waiver of
        immunity for school bus related accidents, their *Motion* can and should be denied.

33.     Additionally, Plaintiffs provide sufficient facts to support a claim that the mechanical
        problems of the bus itself and the related negligence of the bus driver caused the incident
        leading to Gabriel's decease.   Moreover, and in a related vein, Plaintiffs ask this Court to
        take *Judicial Notice* of <u>Harlingen Consol. Indep,. Sch. Dist. v. Miranda</u>, 2019 Tex. App.
        LEXIS 2012 (13th Court of Appeals, Corpus Christi- Edinburg Div., March 14, 2019) where
        this issue has already been determined.  This part of the District's *Motion* should be denied.

D.      PLAINTIFFS HAVE STANDING TO SEEK POST-DEATH CLAIMS

34.     First, the School District mis-states the facts as currently pled.  Specifically, they state that
        all Plaintiff's civil rights claims occurred after his death.  That is not correct.  Plaintiffs argue
        that the Justice of the Peace, Judge Espinoza declared the time of death as 11:45am well after
        the conspiracy and coverup began.   It is uncontroverted that Plaintiffs have standing to
        redress the pre-death claims of Gabriel.

35.     Moreover, the *plain language* of Texas Civil Practices & Remedies Code §71.021(a)
        specifically states that a cause of action to the reputation of the deceased inures to the benefit
        of the heirs and may be prosecuted "as if the person was alive."  Nothing could be clearer.

Plaintiffs have standing to bringing forth a claim that defamed the reputation of Gabriel both in general, i.e.; the contention he committed suicide  and second, that prejudicial statement that Hispanic Males have a predisposition to commit suicide. The School District argues that this Court's decision in 7:18-cv-00348, DE# 60, p. 6-7 has already decided this issue.  That is not correct.  That case was dismissed *without prejudice* on a *Motion To Dismiss* and thus has no preclusive or binding effect on this cause.  <u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182, 1188 (2nd Cir, 1996).

E.     PLAINTIFFS TITLE IX CLAIM IS PLAUSIBLE

1.     PLAINTIFFS HAVE STANDING TO BRING A TITLE IX CLAIM

36.   Title VI of the Civil Rights Act of 1964 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions, not  permit the student to be a victim of discrimination based upon race, nationality or country of origin, or stereotypes based on race, nationality or country of origin.  The fact as noted above, evidence the School Board of the Harlingen Independent School District adopted and ratified a stereotypical premise that ostensibly that because some young men of Hispanic heritage died of unknown causes, it was presumed the deaths were acts of self-harm suicide, and that Gabriel Miranda fit this stereotype.  Such stereotypical thinking, and related verbalization and acts related to such stereotypical thinking, is a violation of Gabriel's good name, members of the Hispanic Community and thus violated his civil rights pursuant to Title VI. A few points are noteworthy.

37.   First, and at least from a jurisdictional perspective, this issue also been adjudicated previously, to which this Court should take *Judicial Notice* thereof.  *See* <u>Miranda v. Farley</u>,

2022 Tex. App. LEXIS 59 (13th Dist.- Corpus Christi- Edinburg; January 6, 2022).

38.    Second, Plaintiffs do not have any constitutional claims in this cause so any argument the District may have as to this issue has no basis and is not applicable to a Title IX claim

39.    Third, and as noted above both Gabriel's pre-death defamatory claim and post-death defamatory claims are viable.

40.    Fourth, the District provides no caselaw for the proposition that a post-death allegation that defames a person based upon race, nationality of country of origin is not plausible.  None. *See* PlainsCapital Bank v. Keller Independent School District, 746 F. App'x 335, 363 (5th Cir. 2018); *see also* Audler v. CBC Innovis Inc., 519 F.3d 239 (5th Cir. 2008)["A party waives an issue if he fails to adequately brief it."].

2.    THE TITLE IX CLAIM IS PLAUSIBLE

41.    For Plaintiffs to have plausible Title VI claim they must show that Gabriel was defamed because of his race; that the defamation was so severe, pervasive and objectively offensive; that he experienced an injury; that the appropriate School District staff had actual knowledge of the defamation was deliberately indifferent to the defamation harassment he experienced. Fennell v. Marion ISD, 804 F.3rd 398, 410 (5th Cir. 2015).  Here agin, the District provides little legal argument in support of their position, and thus can be summarily denied.  *See* PlainsCapital Bank v. Keller Independent School District.

42.     Nevertheless, Plaintiffs respond as follows.  It is uncontroverted that Gabriel is Hispanic. It is uncontroverted that Farley alleged that Hispanic males were prone to suicide and that the School District Superintendent joined in, and ratified, this discriminatory statement.  By not correcting this defamatory statement he was deliberately indifferent to it.  The fair

remaining question is whether or not the allegation that Gabriel committed suicide because he was Hispanic is sufficiently, severe, pervasive and objective offensive.  There is little objection to the position that such a statement is severe and objectively offensive.  But does it satisfy the "pervasive" element?  As a general rule a single incident it does not but in some cases it does. Eaglin v. Port Arthur Indep. Sch. Dist., 2000 U.S. Dist. LEXIS 6103 at *9-10 (ED. TX- Beaumont Div., March 15, 2000).  The determination as to whether or not a specific incident is sufficiently "pervasive" depends on the totality of the circumstances. Donaldson v. CDB, Inc., 335 F. App'x 494, 503 (5th Cir. 2009) and context. Doe v. School Board of Broward County, Florida, 604 F.3d 1248, 1263 (11th Cir. 2010).  This analysis is best left for a *Motion For Summary Judgment* and is premature at this juncture in the litigation.  This portion of the District 12(b)(6) *Motion* should be denied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the (12)(b)(1) *Motion To Dismiss* and the 12(b)(6) *Motion To Dismiss* both be denied, or alternatively in part, and for such other relief as this Court deems just and proper in law or in equity or both.  Morever, and also in addition and the alternative, if the Court determines that Plaintiffs Title VI claim is without merit, Plaintiffs first request the remaining Texas Tort Claim Act cause of action be consolidated into Cause Civil Action No. 7:18:cv-0348.  Second, that the remaining state law claim be dismissed without prejudice and remanded back to stat court.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq
marty@cirkielaw.com [Email].

State Bar No.: 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this the 7th day of March 2022, a true and correct copy of the above and foregoing document was served electronically upon the below-referenced counsel of record or party in accordance with the Texas Rules of Civil Procedure.

Ms. Leandra C. Ortiz, Attorney
WALSH GALLEGOS TREVINO
KYLE, & ROBINSON, PC
6770 W. Expressway 83
Suite 301
Harlingen, Texas 78552
lortiz@wabsa.com [Email]; and

Ms. Katie E. Payne, Attorney
kpayne@wabsa.com [Email]; and
D. Craig Wood, Attorney
cwood@wabsa.com [Email]
WALSH GALLEGOS TREVINO
KYLE, & ROBINSON, PC
1020 N.E. Loop 410
Suite 450
San Antonio, Texas 78209

/s/ Martin J. Cirkiel
Martin J. Cirkiel